Arthur GAZE

v.

STATE.

No. 86–28–C.A.

Supreme Court of Rhode Island.

Feb. 23, 1987.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, for plaintiff.

Arlene Violet, Atty. Gen., Henry S. Monti, Thomas Dickinson, Sp. Asst. Attys. Gen., for defendant.

## OPINION

FAY, Chief Justice.

This is an appeal from a Superior Court denial of post-conviction relief. The petitioner claims he was denied the constitutional right to confront his accusers during parole-revocation proceedings. We sustain his appeal.

In June of 1965 petitioner, Arthur Gaze (Gaze), was sentenced to a twenty-five-year prison term for second-degree murder. He was released on parole in June 1974 because of his excellent prison record and maintained that freedom until 1983. On April 20, 1983, as a result of charges brought by the Providence Police Department for first-degree sexual assault, a parole-detention warrant was issued against

Gaze. A preliminary revocation hearing before a single hearing officer followed on May 12, 1983, to determine whether probable cause existed to revoke Gaze's parole.

A document entitled "Decision & Summary," and signed by the hearing officer, constitutes the only record of what occurred at this probable-cause hearing. The hearing officer's summary indicates that Detective Donnelly of the Providence police was the sole witness called by the state to testify about the circumstances precipitating the sexual-assault charges. The detective, reading from a police report, disclosed that the matter was brought to the attention of the police by the victim's mother on April 17, 1983. According to the report, the mother told police that she dropped her seven-year-old daughter (the victim) off at Gaze's house on April 2, 1983, then went with Gaze's girlfriend (her friend) to play bingo. She further reported to the police that her friend's young son, who lived in the same house, told his mother that he saw Gaze in bed with the victim. The report also indicated that the victim herself told police that Gaze had "humped" her.

In addition to this police report, the detective read into evidence a statement given by the victim describing the incident, a statement taken from the girlfriend's son, and a medical report from Women and Infants Hospital. Gaze was permitted to cross-examine the detective at the conclusion of his direct testimony. Thereafter, Gaze was sworn in and gave testimony denying that the sexual assault ever took place.

Gaze's attorney, in summing up the case for the hearing officer, referred three times to his inability to cross-examine either the victim or the girlfriend's son. He concluded that a probable-cause determination would therefore be unfounded. If the hearing officer did find probable cause, however, Gaze's attorney requested that no action be taken by the full parole board until after Gaze's trial on the substantive charges.

The hearing officer did, in fact, find that probable cause existed to revoke parole.

He issued his decision-and-summary report on May 13, 1983. The parole board, meeting on July 7, 1983, adopted the hearing officer's recommendation and revoked Gaze's parole pending the conclusion of his criminal trial. It thereupon issued a revocation warrant and sent Gaze back to the Adult Correctional Institutions.

In February 1985, after standing trial before a jury, Gaze was acquitted of the sexual-assault charges. Following his acquittal, the parole board met on May 9, 1985 to reconsider its earlier revocation decision. It voted the same day to confirm the 1983 revocation.

This application for postconviction relief was filed by Gaze in the Superior Court on June 17, 1985. The postconviction justice heard the application and denied it in a bench decision. He found that the victim had been available for Gaze to cross-examine and that although Gaze had had the opportunity to bring the victim before the parole board himself, he chose instead to avoid face-to-face confrontation with the victim at the parole-board hearing. In addition, the hearing justice found that the board had the child-victim's trial testimony before it in 1985 when it voted to confirm the 1983 revocation. All of this, in the justice's opinion, was sufficient to satisfy due process.

This court, when reviewing a postconviction-relief proceeding, is bound by the hearing justice's findings of fact, absent clear error or a showing that material evidence was overlooked or misconceived. *State v. D'Alo,* 477 A.2d 89, 91 (R.I.1984); *State v. Dufresne,* 436 A.2d 720, 722 (R.I.1981). A review of the parole-board records and the post-conviction proceedings convinces us that the hearing justice was in error when he denied Gaze relief.

The single issue for our consideration is whether the hearing officer, at the probable-cause hearing, erroneously denied Gaze a due-process right to confrontation when he permitted the police detective to read the hearsay declarations of the two child witnesses into evidence.

■ Although revocation of parole is not part of the criminal-prosecution process, and is therefore not entitled to the full panoply of due-process rights, it is acknowledged that revocation proceedings must accord the parolee a minimum degree of due-process protection. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). This court, in the analogous area of probation revocation, has consistently recognized basic due-process requirements, including the probationer's right to cross-examine his accusers at the revocation hearing. *State v. Potter*, 423 A.2d 67 (R.I.1980); *State v. Marrapese*, 122 R.I. 494, 409 A.2d 544 (1979); *State v. DeRoche*, 120 R.I. 523, 389 A.2d 1229 (1978).

In *DeRoche* the defendant's probationary status was revoked and sentence imposed on the basis of a hearsay statement taken by police from the defendant's alleged accomplice. The defendant claimed that his inability to cross-examine the alleged accomplice violated his right to due process under the Fourteenth Amendment. We concurred and adopted as our minimum degree of due process for revocation hearings those protections first enumerated by the United States Supreme Court in *Morrissey, supra,* and later applied by it to the probation revocation context in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

The Supreme Court, in *Morrissey*, outlined the following procedures as conferring sufficient minimum rights and protections on parolees facing revocation to pass constitutional muster. The court required that a two-hearing process be conducted: a preliminary hearing in the first instance, to be followed by a revocation hearing before the full parole board. At the preliminary stage, the court concluded that a neutral hearing officer must determine whether probable cause exists to believe the parolee violated the conditions of parole. The parolee, at this first stage, is entitled to

"notice that the hearing will take place and that its purpose is to determine whether there is probable cause to be-

lieve he has committed a parole violation. * * * At the [preliminary] hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. On request of the parolee, [the] person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence. However, if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination." *Morrissey*, 408 U.S. at 486–87, 92 S.Ct. at 2603, 33 L.Ed.2d at 497–98.

With regard to the second stage (the actual revocation hearing before the entire parole board) minimum due process requires

"(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499.

■ We are concerned here only with the due-process requirements for the preliminary-hearing stage. A review of the proceedings before us reveals that the state failed to comply with the requisite degree of due process at this stage. At the preliminary hearing in May 1983, the state introduced hearsay statements made by the victim and the other child witness through the testimony of the detective. The state never produced the children at the hearing, thus Gaze was unable to examine or cross-examine them.

Because no transcript of this probable-cause proceeding exists, we must rely completely on the summary report compiled by the hearing officer. It indicates that counsel for Gaze on three occasions complained about his inability to cross-examine the two children. Relying on this summary, we conclude that these three references demonstrate counsel's desire to confront the witnesses and prove that counsel properly objected to their absence from the hearing.

According to the *Morrissey* standards, once the parolee requests the presence of an adverse witness, or objects to the absence of that witness from the preliminary hearing, the burden shifts to the hearing officer to justify, for the record, the unavailability of the absent witness. The hearing officer must find "good cause" to prohibit confrontation and cross-examination before the absent witness's hearsay declaration may come into evidence. 408 U.S. at 486–87, 92 S.Ct. at 2603, 33 L.Ed.2d at 498. This court has recognized the same "good cause" requirement, in similar circumstances, in the probation revocation setting. *See State v. Potter*, 423 A.2d at 68 ("[i]f the declarant is not available for cross-examination * * * the trial justice is to make a specific finding that there is just cause for not permitting confrontation before the hearsay testimony is admitted into evidence").

The record in this case contains no evidence to establish that the hearing officer ever made such a good-cause determi-

nation. Consequently, we conclude that Gaze was denied the commensurate due-process protection. The children should have been produced for Gaze to question, or in the alternative, the hearing officer should have specifically justified their unavailability. Neither was done.

The postconviction justice disregarded the preliminary-hearing officer's failure to satisfy the good-cause requirement. His findings of fact indicate that he was laboring under the assumption that the hearing-officer's omission was rectified by the full parole board at the later proceedings and was distracted by what he perceived to be Gaze's ability, and responsibility, to secure the attendance of the two children before the board.

Likewise, the state on appeal ignores the due-process violation at the probable-cause hearing. The state suggests that had Gaze raised the confrontation issue before the board on appeal,[1] the board could have corrected the hearing officer's mistake either by granting Gaze the opportunity to cross-examine the children then and there or presumably by making its own good-cause determination. The decision by Gaze not to pursue the confrontation issue on appeal to the board was, in the state's opinion, intentional and strategic, designed to "sandbag" the state at the subsequent postconviction-relief hearing. Therefore, the state reasons, Gaze must be deemed to have waived the right to contest the denial of cross-examination.

1. General Laws 1956 (1981 Reenactment) chapter 8 of title 13 establishes no procedure for "appealing" the hearing officer's recommendation to the full parole board. Section 13–8–18, which vests power to revoke parole with a majority of the board, was enacted prior to the Supreme Court's decision in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and has not been amended by the General Assembly in the fifteen years since that decision. Section 13–8–18 reads:

"Revocation of parole—Hearing.—The board may, by a majority vote of all of its members, revoke, with or without hearing, any permit issued by it to any prisoner under the provisions of this chapter, whenever it shall appear to the board that such prisoner has violated any of the terms or conditions of

his permit, or has during the period of his parole violated any of the laws of the state, and whenever it shall come to the knowledge of the parole board that any prisoner at liberty under such permit has been guilty of any such violation, the chairman shall issue his warrant to any officer authorized to serve criminal process, to arrest such prisoner and commit him to the adult correctional institutions, to be detained therein until the board shall have an opportunity to determine whether the permit of such prisoner shall be revoked, and if the board shall determine that such permit shall not be revoked, then the board shall forthwith order such prisoner to be set at liberty under the terms and conditions of his original permit."

The underlying flaw in the hearing justice's and the state's respective positions is their assumption that Gaze received a full-blown evidentiary hearing before the parole board. The record before us, however, is silent on what transpired before the board on July 7, 1983 when it voted to revoke Gaze's parole. The board's notation on the records for that date states:

> "The Board voted to REVOKE parole until such time as the court rules on his offense. The revocation is due to the gravity of the offenses and the gravity for which Mr. Gaze first came to the institution."

There is no evidence that Gaze was given advance notice that his case would be considered by the board that day, no evidence to suggest that Gaze or his attorney were permitted to appear and be heard by the board that day, and no evidence that an actual evidentiary revocation hearing was ever conducted by the board. In the absence of any evidence to the contrary, we are compelled to find that the board's 1983 revocation decision occurred at a simple meeting of its members.[2]

The hearing justice, therefore, clearly misconceived material evidence in denying Gaze's petition for relief. Gaze was wrongfully denied the right to cross-examine the children at the probable-cause hearing, and nothing the parole board did subsequent to that hearing corrected the due-process deprivation.[3]

For the reasons stated, the petitioner's appeal from the denial of his application for postconviction relief is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court with directions to vacate the revocation of parole and recompute the petitioner's time to serve.

---

**2.** Because petitioner did not raise the issue on appeal, we shall not address the question of whether, assuming the hearing officer in accordance with full due-process protections conducts a probable-cause hearing, the parole board may revoke parole at a meeting of its membership without conducting its own separate evidentiary hearing.

**3.** The hearing justice placed some emphasis on the fact that the board, in 1985, had access to the child-victim's trial testimony. We find that fact, if true, to be irrelevant. The due-process deprivation that occurred at the preliminary hearing in 1983 could not be undone by reviewing the child's trial testimony two years later.