Justice Goldberg, dissenting.
 

 The majority has erred in this case; it has reached issues of constitutional dimension that were not raised by the parties and are not properly before the Supreme Court or even necessary to our decision, and it has decided them wrongly. The majority's decision amounts to a judicial amendment of the general laws relative to parole revocation, and will adversely affect the orderly procedures of the Parole Board. I am therefore compelled to write separately in an effort, at the very least, to illuminate where the majority opinion has gone off the rails.
 

 Parole Revocation is Governed by Statute in Rhode Island
 

 The majority opinion references the minimum due-process requirements for parole-revocation proceedings set forth by the United States Supreme Court in
 
 Morrissey v. Brewer
 
 ,
 
 408 U.S. 471
 
 ,
 
 92 S.Ct. 2593
 
 ,
 
 33 L.Ed.2d 484
 
 (1972), and declares
 that Jefferson was entitled to each of those requirements at his final parole hearing and also holds that "it was error to deny [Jefferson] representation of counsel and his 'opportunity to be heard in person' when the Parole Board voted to revoke his parole on November 10, 1994." (Quoting
 
 Morrissey
 
 ,
 
 408 U.S. at 489
 
 ,
 
 92 S.Ct. 2593
 
 .) The majority opinion ignores the holding in
 
 Morrissey
 
 that procedural guarantees in the parole-revocation context, as mandated by the Due Process Clause, fall upon the states and that at the time
 
 Morrissey
 
 was promulgated, most states already had procedural protections in place.
 

 Id.
 

 at 484
 
 ,
 
 92 S.Ct. 2593
 
 . "What is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior."
 

 Id.
 

 The concerns in
 
 Morrissey
 
 centered on the potential for arbitrary revocation decisions based on putative violations of the conditions of one's parole. The "discretionary aspect of the
 
 revocation
 
 decision need not be reached unless there is
 
 first
 
 an appropriate determination that the individual has in fact breached the conditions of parole."
 

 Id.
 

 at 483-84
 
 ,
 
 92 S.Ct. 2593
 
 (emphasis added). The Supreme Court also recognized the public's interest "in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole, given the breach of
 
 parole conditions
 
 ."
 

 Id.
 

 at 484
 
 ,
 
 92 S.Ct. 2593
 
 (emphasis added). None of these salutary considerations concern the commission of a new felony crime by the parolee and the statutory consequences of that crime; which is the case before us on appeal.
 

 The appellants in
 
 Morrissey
 
 were returned to prison by the Iowa Board of Parole as parole violators-without a hearing or opportunity to be heard-not for the commission of new criminal offenses, but for alleged violations of the conditions of parole set forth in their parole officers' reports, including,
 
 inter alia
 
 , the unauthorized purchase of a motor vehicle, use of an assumed name to obtain credit and a driver's license, and leaving the territorial limits of the county without consent.
 
 Morrissey
 
 ,
 
 408 U.S. at 474
 
 ,
 
 92 S.Ct. 2593
 
 . The Supreme Court declared that the liberty interest in remaining on parole was sufficient to require minimum due-process protections.
 

 Id.
 

 at 483-84
 
 ,
 
 92 S.Ct. 2593
 
 . The Court was confronted with prisoners who were accused of violating the conditions of their parole, not individuals convicted of violent felony crimes. Notwithstanding this distinction, the overriding emphasis of the Supreme Court as set forth repeatedly in
 
 Morrissey
 
 was the declaration that "there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry * * *. * * * We have no thought to create an inflexible structure for parole revocation procedures."
 

 Id.
 

 at 489, 490
 
 ,
 
 92 S.Ct. 2593
 
 . The majority opinion misconstrues the seminal holding in
 
 Morrissey
 
 .
 

 This Court has long recognized "that revocation proceedings must accord the parolee a minimum degree of due-process protection."
 
 Gaze v. State
 
 ,
 
 521 A.2d 125
 
 , 127 (R.I. 1987). The issues in this case, however, are wholly unrelated to the minimum due-process requirements for revocation hearings. The majority overlooks the fact that Jefferson's parole and its revocation were governed by the law of the Commonwealth of Pennsylvania and the then-existing Rhode Island "Uniform Act for Out of State Parolee Supervision," under which Jefferson was afforded an evidentiary hearing with the benefit of counsel before he was declared in violation of his parole. Jefferson was then convicted in Pennsylvania of the underlying offense that gave rise to the violation, and sentenced
 to twenty years imprisonment. This conviction and sentence, of course, obviated any due-process requirement for a prompt resolution of the parole revocation issue.
 
 See
 

 Moody v. Daggett
 
 ,
 
 429 U.S. 78
 
 , 85 n.7,
 
 97 S.Ct. 274
 
 ,
 
 50 L.Ed.2d 236
 
 (1976) (criminal conviction serves to eliminate the need for a preliminary parole-revocation hearing as required by
 
 Morrissey
 
 because the conviction supplies the parole authority with the requisite probable cause to believe parolee committed acts that would constitute a violation of the conditions of his or her parole).
 

 In 1994, when the Parole Board voted to revoke Jefferson's parole, Jefferson had been found guilty in Pennsylvania, beyond a reasonable doubt, of the offense of aggravated assault, an offense classified as a violent felony crime. Despite the finality of this criminal conviction, the majority decrees,
 
 sua sponte
 
 , that
 
 in 1994
 
 ,
 
 while incarcerated in Pennsylvania
 
 , in accordance with the Uniform Act, the Due Process Clause of the United States Constitution mandated that Jefferson was entitled to be provided with,
 
 inter alia
 
 , written notice of the claimed violation and the evidence against him, as well as an opportunity to be heard
 
 in person
 
 , present witnesses and documentary evidence, and confront and cross-examine the witnesses against him. The majority has declared, without any analysis, that the Due Process Clause mandates that Jefferson be afforded the opportunity to relitigate the merits of the Pennsylvania conviction. The majority is incorrect. This holding misconstrues the Supreme Court's jurisprudence and this Court's holdings in the area of parole revocation.
 

 Furthermore, the majority goes on to declare that in 2014-after he served the entire sentence in Pennsylvania-minimum due process required that Jefferson be afforded counsel, notice of the evidence, an opportunity to be heard in person, and the right to confront and cross-examine adverse witnesses, as well as the right to relitigate the merits of that offense. The majority opinion ignores the requirements of G.L. 1956 § 13-8-14(b), the statute under review in this case, and imposes requirements that will drastically alter the manner in which the Parole Board conducts parole-revocation proceedings. The opinion amounts to a judicial amendment of the parole statute.
 

 Parole revocation has long been recognized as a "nonadversarial, administrative process[ ] established by the States" that is "predictive and discretionary," designed "to promote the best interests of both parolees and society * * *."
 
 Pennsylvania Board of Probation and Parole v. Scott
 
 ,
 
 524 U.S. 357
 
 , 366, 367,
 
 118 S.Ct. 2014
 
 ,
 
 141 L.Ed.2d 344
 
 (1998) (quoting
 
 Gagnon v. Scarpelli
 
 ,
 
 411 U.S. 778
 
 , 787-88,
 
 93 S.Ct. 1756
 
 ,
 
 36 L.Ed.2d 656
 
 (1973) ). Indeed, the Supreme Court has refused "to intrude into the States' correctional schemes[,]" recognizing that "States have wide latitude under the Constitution to structure parole revocation proceedings."
 
 Id.
 
 at 365, 367,
 
 118 S.Ct. 2014
 
 .
 

 In this state, the parole system is a creature of the Legislature. One who is imprisoned as a result of a criminal conviction is "turned over to an administrative agency for the execution of the sentence."
 
 State v. Fazzano
 
 ,
 
 96 R.I. 472
 
 , 478,
 
 194 A.2d 680
 
 , 684 (1963). Parole is a legislatively-created system, governed by chapter 8 of title 13 of the general laws, whereby the prisoner is granted conditional release to serve the remainder of the sentence outside the confines of the prison, but under the supervision and upon conditions of the Parole Board, an administrative body created by the Legislature. "Courts have no power to determine the penological system; this is within the exclusive jurisdiction
 of the [L]egislature."
 
 Fazzano
 
 ,
 
 96 R.I. at 478
 
 ,
 
 194 A.2d at 684
 
 . This Court has adopted a "hands-off" policy when dealing with Parole Board proceedings, and has consistently expressed our reluctance to interfere with this orderly, legislatively-created structure.
 
 State v. Ouimette
 
 ,
 
 117 R.I. 361
 
 , 363,
 
 367 A.2d 704
 
 , 706 (1976). "This [C]ourt has previously acknowledged a historically hands-off policy with respect to board proceedings 'and the overall reluctance to interfere with what must necessarily be highly discretionary decisions.' "
 
 Pine v. Clark
 
 ,
 
 636 A.2d 1319
 
 , 1324 (R.I. 1994) (quoting
 
 Ouimette
 
 ,
 
 117 R.I. at 363
 
 ,
 
 367 A.2d at
 
 706 ). At no time in the thirty-plus years since our holding in
 
 Gaze
 
 , in which we acknowledged that basic due-process requirements were required in parole-revocation proceedings, has this Court had occasion to interfere with the proceedings of the Parole Board.
 
 See
 

 Gaze
 
 ,
 
 521 A.2d at 127
 
 . We certainly have never ventured into this area in the absence of a justiciable issue, with no briefing by the parties. In this appeal, without any analysis, the majority has judicially altered the procedures of the Parole Board and, with no record before us, concluded that the Parole Board violated Jefferson's constitutional rights.
 

 Parole-revocation hearings are administrative in nature and governed by statute. Section 13-8-18 provides that a majority of the members of the Parole Board may, in accordance with the provisions of § 13-8-18.1, revoke any permit issued to any prisoner under its jurisdiction. Section 13-8-18.1 sets forth in detail the process under which the Parole Board may exercise its broad discretion. Section 13-8-18.1 is set forth in its entirety here because several of its provisions have a direct bearing on this case:
 

 "13-8-18.1. Preliminary parole violation hearing.
 

 "(a) As soon as is practicable after a detention for an alleged violation of parole, the parole board shall afford the alleged parole violator a preliminary parole revocation hearing before a hearing officer designated by the board. Such hearing officer shall not have had any prior supervisory involvement over the alleged violator.
 

 "(b) The alleged violator shall, within five (5) days of the detention, in Rhode Island be given written notice of the time, place and purpose of the preliminary hearing. The notice shall state the specific conditions of parole that are alleged to have been violated and in what manner. The notice shall also inform the alleged violator of the following rights in connection with the preliminary hearing:
 

 "(1) The right to appear and speak in his/her own behalf;
 

 "(2) The right to call witnesses and present evidence;
 

 "(3) The right to confront and cross-examine the witnesses against him/her, unless the hearing officer finds on the record that a witness may be subjected to risk of harm if his or her identity is revealed; and
 

 "(4) The right to retain counsel and, if unable to afford counsel, the right under certain circumstances to the appointment of counsel for the preliminary hearing.
 

 "The determination of whether or not the alleged violator is entitled to appointed counsel, if such a request is made, shall be made on the record and in accordance with all relevant statutory and constitutional provisions.
 

 "(c) The notice form must explain in clear and unambiguous language the procedures established by the parole board concerning an alleged violator's exercise of the rights denominated in subsection (b), including the mechanism
 for compelling the attendance of witnesses, the mechanism for obtaining documentary evidence, and the mechanism for requesting the appointment of counsel.
 

 "(d) The preliminary hearing shall take place no later than ten (10) days after service of notice set forth in subsection (b). A preliminary hearing may be postponed beyond the ten (10) day time limit for good cause at the request of either party, but may not be postponed at the request of the state for more than five (5) additional days. The parole revocation charges shall be dismissed with prejudice if a preliminary hearing is not conducted within the time period established by this paragraph, not including any delay directly attributed to a postponement requested by the alleged violator.
 

 "(e) If the alleged violator has requested the appointment of counsel at least five (5) days prior to the preliminary hearing, the preliminary hearing may not proceed without counsel present unless the hearing officer finds on the record, in accordance with all relevant statutory and constitutional provisions, that the alleged violator is not entitled to appointed counsel.
 
 If the alleged violator is found to have been entitled to counsel and no such counsel has been appointed, the parole violation charges must be dismissed with prejudice.
 
 If the request for counsel was made four (4) or fewer days in advance of the preliminary hearing, the time limit within which the preliminary hearing must be held may be extended up to five (5) additional days.
 

 "(f) The standard of proof at the preliminary hearing shall be probable cause to believe that the alleged violator has violated one or more conditions of his or her parole and that the violation or violations were not de minimus in nature.
 
 Proof of conviction of a crime committed subsequent to release on parole shall constitute probable cause for the purposes of the preliminary hearing.
 

 "(g) At the preliminary hearing, the hearing officer shall review the violation charges with the alleged violator, direct the presentation of the evidence concerning the alleged violation, receive the statements of the witnesses and documentary evidence, and allow cross-examination of those witnesses in attendance. All proceedings shall be recorded and preserved.
 

 "(h) At the conclusion of the preliminary hearing, the hearing officer shall inform the alleged violator of his or her decision as to whether there is probable cause to believe that
 the alleged violator has violated one or more conditions of his or her parole and, if so, whether the violation or violations were de minimus in nature. Those determinations shall be based solely on the evidence adduced at the preliminary hearing. The hearing officer shall state in writing the reasons for his or her determinations and the evidence relied upon for those determinations. A copy of the written findings shall be sent to the alleged violator, and his or her counsel if applicable, within fourteen (14) days of the preliminary hearing.
 

 "(i) If the hearing officer finds that there is no probable cause to believe that the alleged violator has violated one or more conditions of his or her parole or that the violation or violations, if any, were de minimus in nature, the parole chairperson shall rescind the detention warrant and direct that the alleged violator, unless in custody for other reasons, be released and restored to parole supervision.
 

 "(j) If the hearing officer finds that there is probable cause to believe that the alleged violator has violated one or more conditions of his or her parole and that the violation or violations were not de minimus in nature, the alleged violator shall be held for a final parole revocation hearing. A final parole revocation hearing must be held as soon as is practicable, but in no event more than ninety (90) days after the conclusion of the preliminary hearing.
 

 "(k) An alleged violator may waive his or her right to a preliminary hearing. Such a waiver must be in written form. In the event of such a written waiver, a final parole revocation hearing must be held as soon as is practicable, but in no event more than ninety (90) days after the right to a preliminary hearing is waived. Notwithstanding the above, a final parole revocation hearing may be continued by the alleged violator beyond the ninety (90) day time period." (Emphasis added.)
 

 The majority opinion wholly overlooks this statute, in which the Legislature has enacted a comprehensive and efficient procedure for the Parole Board to address parole violations. This Court should refrain from entering these waters. First, clearly, the parolee's due-process rights to notice and an opportunity to be heard and to confront one's accusers, as set forth in § 13-8-18.1(a) and (b), mirrors the Supreme Court's pronouncement in
 
 Morrissey
 
 ,
 
 408 U.S. at 489
 
 ,
 
 92 S.Ct. 2593
 
 . Second, the parolee's right to counsel and right "under certain circumstances to the appointment of counsel" also are provided by statute.
 
 See
 
 § 13-8-18.1(b)(4). Critically, for purposes of this case, § 13-8-18.1(e) provides that "[i]f the alleged violator is found to have been entitled to counsel and no such counsel has been appointed, the parole violation charges
 
 must be dismissed with prejudice
 
 ." (Emphasis added.) Alarmingly, with no record of the Parole Board proceeding, the majority has concluded that Jefferson was entitled to counsel, and that no such counsel was appointed.
 

 Jefferson's Parole Violation
 

 To begin with, we have no record in this case and, with the exception of the documents attached to Jefferson's
 
 pro se
 
 application for postconviction relief, we have no idea what occurred before the Parole Board in 1994, and again in 2014, twenty years after the conviction that gave rise to Jefferson's parole revocation. What is clear in these paltry materials is that Jefferson sought to relitigate the merits of his Pennsylvania criminal conviction before the Parole Board and again in Superior Court on postconviction relief, where he alleged actual innocence to those charges. The majority has declared that it was error for the Parole Board to deny Jefferson counsel and an opportunity to be heard in person when the Parole Board voted to revoke his parole on November 10, 1994, and again at the 2014 hearing. The majority also concludes that Jefferson was entitled to disclosure of the evidence against him, the right to confront and cross-examine adverse witnesses, and a written statement of the evidence relied upon in revoking his parole. The majority is mistaken. The Pennsylvania conviction is conclusive on the question of whether Jefferson committed a parole violation.
 
 See
 
 § 13-8-18.1(f). In the usual course of events, when confronted with a finding of probable cause to conclude that the parolee has violated a condition of his or her parole, the Parole Board, in a final hearing, would determine whether Jefferson's parole permit should be revoked. In the case of a criminal conviction, the parolee is not entitled to relitigate the merits of the conviction.
 

 However, because Jefferson was serving a sentence of life imprisonment when he was granted parole, the Parole Board's
 discretion was limited. The only question before the Parole Board was whether Jefferson's felony conviction in Pennsylvania for aggravated assault falls within the provisions of § 13-8-14(b). This is a question of law. The majority opinion ignores the provisions of this statute that are triggered upon conviction of a violent crime while on parole, by one serving a sentence of life imprisonment, and "shall constitute an
 
 automatic revocation of parole
 
 and the prisoner shall not be eligible for parole thereafter." (Emphasis added.) This is the controlling statutory provision before this Court.
 

 Section 13-8-14(b) provides, in its entirety:
 

 "In the case of a prisoner sentenced to imprisonment for life who is released on parole and who is subsequently convicted of a crime of violence as defined in § 11-47-2, the conviction shall constitute an automatic revocation of parole and the prisoner shall not be eligible for parole thereafter."
 

 After his term of incarceration in Pennsylvania, Jefferson was returned to Rhode Island and appeared before the Parole Board on April 14, 2014; he was subsequently informed that the Parole Board voted to affirm his 1994 parole revocation. It is fair to say that, in the face of a final criminal conviction for a violent felony, the board had no discretion but to inform Jefferson that the provisions of § 13-8-14(b) applied to him.
 

 The operative language in § 13-8-14(b) is that "the
 
 conviction
 
 shall constitute an
 
 automatic revocation
 
 of parole[.]" (Emphasis added.) A conviction for a crime of violence, as enumerated in § 11-47-2, is conclusive. Because the Pennsylvania conviction is accorded full faith and credit, no court or administrative body would look behind the judgment to determine whether there is probable cause to conclude that the parolee violated parole. The majority's suggestion that
 
 Morrissey
 
 mandates or even permits the Parole Board to look beyond the conviction and permit Jefferson to confront his accusers twenty years after the conviction simply is wrong.
 
 See
 

 Lee v. Gough
 
 ,
 
 86 R.I. 23
 
 , 32,
 
 133 A.2d 779
 
 , 783 (1957) (considering parole to be void as of the date of subsequent criminal conviction);
 
 see also
 

 State v. Seamans
 
 ,
 
 935 A.2d 618
 
 , 622 (R.I. 2007) (admission of guilt to the underlying offense is tantamount to admission of fault with respect to probation violation). Furthermore, the Legislature has addressed the effects of a criminal conviction in the parole violation context: Section 13-8-18.1(f) provides, in relevant part, that "[p]roof of conviction of a crime committed subsequent to release on parole shall constitute probable cause for the purposes of the preliminary hearing." Thus, the issue of whether Jefferson violated his parole in Pennsylvania was conclusive; it is not however, the controlling issue in this case.
 

 It is only when a parolee serving a life sentence has been convicted of an enumerated violent crime that § 13-8-14(b) becomes operative and "shall constitute an automatic revocation of parole[.]" By employing the term "automatic," the Legislature has divested the Parole Board of any discretion in its application. Parole is revoked by operation of law, and the second part of that section comes into play: "the prisoner shall not be eligible for parole thereafter." In the case at bar, it was only
 
 after
 
 Jefferson was convicted of aggravated assault and sentenced to and served twenty years in prison in Pennsylvania that the Parole Board entered its final revocation decision.
 
 See
 

 Moody v. Daggett
 
 ,
 
 429 U.S. 78
 
 , 87,
 
 97 S.Ct. 274
 
 ,
 
 50 L.Ed.2d 236
 
 (1976) (final parole revocation hearing not constitutionally required until the prisoner
 is taken into custody as a parole violator).
 

 Once Jefferson returned to Rhode Island in 2014 as a parole violator, it was incumbent upon the Parole Board to determine whether the crime of aggravated assault, for which he had been convicted, fell within the enumerated offenses set forth in § 11-47-2. I am confident that the Parole Board did not employ the provisions of § 13-8-14(b) in a vacuum and that the presumption of administrative regularity that generally attaches to the decisions of administrative bodies obtains in this case.
 
 See
 

 Ouimette
 
 ,
 
 117 R.I. at 372
 
 ,
 
 367 A.2d at 710
 
 (the Court has every confidence that the Parole Board, charged with significant responsibility, carries out its duties faithfully according to statutory directions);
 
 see generally
 

 Gardner v. Cumberland Town Council
 
 ,
 
 826 A.2d 972
 
 , 978 (R.I. 2003) (broad latitude given to legislative bodies). Furthermore, and most critically, whether Jefferson's Pennsylvania conviction fell within the provisions of § 11-47-2 is a question of law that is reviewed
 
 de novo
 
 . The mandate set forth in the majority opinion requires the Parole Board "to conduct a new parole revocation hearing which complies with the requirements of due process and the right to be represented by counsel * * *." The majority should explicate just what is expected of the Parole Board at this juncture, and how it should be accomplished.
 

 Unfortunately, this analysis is not the terminus of my alarm at the degree and breadth of error in the majority's opinion.
 

 Waiver
 

 In a
 
 footnote
 
 , the majority opinion reaches and then decides the question of whether, in his
 
 pro se
 
 application for postconviction relief, Jefferson waived the constitutional claims raised by his appellate counsel on appeal. Indeed, the majority not only concludes that, by citing
 
 Morrissey
 
 , Jefferson "clearly raised the violation of his due process rights"-which is irrelevant-but with no analysis, discussion, or citation to authority, the majority takes an unacceptable leap and declares that, by merely
 
 mentioning
 
 "due process" in his
 
 pro se
 
 application for postconviction relief, Jefferson preserved "his contention that the
 
 ex post facto
 
 clause of the United States Constitution was violated when his parole was revoked and he was denied the possibility of parole in the future." This remarkable holding, set forth in a footnote, is legally incorrect and overlooks the entire argument by the state, which was based on waiver. Because the question of waiver forms the basis for the state's argument in favor of affirming the judgment of the Superior Court, its resolution belongs in the body of the opinion with appropriate jurisprudential support and analysis.
 

 There is no question that, in the ordinary case, the raise-or-waive rule would be a significant hurdle for Jefferson to overcome. Even Jefferson does not suggest that the mere mention of the phrase "due process" suffices to overcome the raise-or-waive rule. In his reply brief to this Court, Jefferson argues against the application of the raise-or-waive rule, not because the issues were preserved as the majority concludes, but in light of the grave injustices wrought upon him by the application of
 
 Shatney v. State
 
 ,
 
 755 A.2d 130
 
 (R.I. 2000), to his
 
 pro se
 
 application for postconviction relief, such that the question of waiver ought not apply. I agree. The applicant was denied his statutory right to counsel, and he has every right to have his claims fully and fairly litigated in the Superior Court.
 

 Shatney
 
 Should be Laid to Rest
 

 I also write separately to express my firm belief that this Court should abrogate the holding in
 
 Shatney
 
 ,
 
 755 A.2d at 136
 
 , in
 its entirety. This Court's attempt in
 
 Shatney
 
 to short-circuit duplicitous applications for postconviction relief has too often resulted in the denial of an applicant's right to collateral review of his or her conviction. Simply put, the
 
 ad hoc
 
 nature of
 
 Shatney
 
 and the questionable procedure in which counsel is appointed to undertake an initial review of the merits of a case is a procedural and substantive hodgepodge.
 
 See
 

 Campbell v. State
 
 ,
 
 56 A.3d 448
 
 , 456 (R.I. 2012) (the Superior Court erroneously interpreted
 
 Shatney
 
 as requiring an attorney to report back to the court rather than represent the applicant). It is my opinion that the salutary goal we aimed to accomplish in
 
 Shatney
 
 has been misconstrued by the trial bench, is inconsistently applied, and produces disparate and unjust results. Furthermore, the
 
 Shatney
 
 practice overlooks the statutory right of a postconviction-relief applicant in this state to have the assistance of counsel, and ignores the statutory mandate that the
 
 Public Defender
 
 shall be appointed to represent indigent applicants in postconviction-relief cases.
 

 In the case at bar, in accordance with § 13-8-14(b), as a result of his Pennsylvania conviction, Jefferson has been denied any further opportunity for release on parole. He filed a
 
 pro se
 
 application for postconviction relief, and private counsel was appointed. The record contains no explanation as to why the Public Defender was not appointed.
 
 See
 
 G.L. 1956 § 10-9.1-5. The first order of business was to comply with
 
 Shatney's
 
 distasteful gatekeeping function as a condition precedent to litigating one's claim. Private counsel was appointed to determine whether there were any viable issues that would warrant counsel remaining in the case. Notably, the no-merit review performed by private counsel was based solely on the
 
 pro se
 
 application, with no consideration by counsel that other viable grounds for collateral review may exist such that an amended application was in order.
 

 Although the Public Defender in practice refuses to take on
 
 Shatney
 
 cases, notwithstanding the command of the Legislature that the applicant shall be represented by the Public Defender, on appeal, after the case has been dismissed, the Public Defender enters the case, comes before this Court and proceeds to condemn both the trial justice and the
 
 Shatney
 
 attorney.
 
 [1]
 
 As a result, in this case and in many others, applicants seeking postconviction relief are deprived of their right to collateral review of their convictions.
 

 Additionally, § 10-9.1-6(b) specifically allows for summary dismissal of applications for postconviction relief on the pleadings where there is no basis for relief. It provides:
 

 "When a court is satisfied, on the basis of the application, the answer or motion, and the record, that the applicant is not entitled to post conviction relief and no purpose would be served by any further proceedings, it may indicate to the parties its intention to dismiss the application and its reasons for so doing. The applicant shall be given an opportunity to reply to the proposed dismissal. In light of the reply, or on default thereof, the court may order the application dismissed or grant leave to file an amended application or direct that the proceedings
 otherwise continue. Disposition on the pleadings and record is not proper if there exists a genuine issue of material fact." Section 10-9.1-6(b).
 

 The distinguishing factor between
 
 Shatney
 
 and § 10-9.1-6(b) is that the applicant has the benefit of counsel, and the trial justice, the ultimate factfinder, is not called upon to initiate summary disposition measures as a condition precedent to collateral review. Accordingly, it is my opinion that although
 
 Shatney
 
 was a worthwhile and well-intended effort by this Court, it is time for
 
 Shatney
 
 to be assigned to the graveyard of noble causes.
 

 Conclusion
 

 For the reasons set forth in this opinion, I respectfully dissent in this case. I would vacate the judgment and remand this case to the Superior Court with directions to appoint counsel for the applicant and proceed,
 
 ab initio
 
 , in accordance with the provisions of the Post Conviction Remedy statute, chapter 9.1 of title 10.
 

 In her reply brief to this Court, counsel for Jefferson declared that "Mr. Jefferson's court-appointed post-conviction attorney conducted absolutely no investigation into the case and determined that the issues raised in his client's
 
 pro se
 
 pleadings lacked merit. Likewise, a Superior Court judge promptly endorsed this erroneous no-merit finding despite the existence of glaring constitutional issues that appear after reading R.I.G.L. § 13-8-14(b), the statute implicated in this case."