The police also obtained a statement from a bystander to the episode in the parking lot. Jimmy An provided an account of what he saw, along with a description of the Mercedes driver.
Carullo testified that he joined Zundel in working on the case and eventually uncovered evidence that pointed to defendant as the driver of the Mercedes when Zundel encountered it in the parking lot. Zundel was asked to view a photograph of defendant, and based on the photo, Zundel identified defendant as the Mercedes driver that he observed.
C.
During the VOP hearing, Detective Carullo was unable to provide details of the encounter between Zundel and defendant **177 that led to defendant's arrest. Carullo was unable to answer questions designed *355 to test Zundel's ability to observe what his report stated he had witnessed. Carullo admitted that he was "going by [Zundel's] version of events." Several times during his testimony, Carullo's recollection had to be refreshed. He read from Zundel's report. He also refreshed his recollection by reviewing his own report containing information secured from other third parties. Specifically, Carullo could not remember the name of the minivan driver; used Zundel's police report to refresh his recollection concerning the description Thornton had provided of his drug seller; used his own report to refresh his recollection as to the name of witness Jimmy An; could not remember whether the Mercedes windows were tinted; and could not remember what Zundel observed before the minivan arrived.
At the close of the evidence, defense counsel objected to the State's use of hearsay, maintaining that the only witness to testify-Carullo-had not been present during the alleged drug transaction and ensuing events in question. Counsel stated that he was denied the opportunity to confront and question "the person who was actually trying to effect the arrest" about the events that led to defendant's new criminal charges. He argued that the State had not produced sufficient evidence to carry its burden of proof on the substantive aspects of defendant's probation violation charge.
Following an adjournment, the State declined to produce more evidence, arguing that hearsay is admissible in VOP hearings and that the standard of proof is lower in such hearings than in a typical criminal trial. The court agreed. Although noting that it "appreciate[d] the desire defense might have to have the actual witness present," the court stated that it was not required to follow the rules of evidence in a VOP hearing. The court determined that the record contained sufficient evidence to conclude that defendant violated probation. For that violation of probation, the court sentenced defendant to five years in prison with a two-and-a-half-year parole disqualifier.
**178 Defendant appealed, arguing in relevant part that he was denied due process by the admission and use of hearsay in the VOP hearing. The Appellate Division rejected the argument and affirmed in an unpublished opinion. Stating that a defendant's right to confrontation is not absolute, the panel reasoned that a VOP hearing is not a criminal prosecution and that a trial court may rely on hearsay evidence so long as it is "demonstrably reliable." The panel determined that Carullo's testimony met that standard because he had "actively investigated defendant's actions" and had extensive experience "interviewing witnesses and gathering evidence against those being investigated."
We granted defendant's petition for certification, "limited to the issue of the trial court's acceptance of hearsay testimony as proof that defendant committed a new offense in violation of probation." 228 N.J. 433, 157 A.3d 849 (2016). We also granted the motions of the American Civil Liberties Union of New Jersey (ACLU-NJ) and the Attorney General to appear as amicus curiae.
II.
A.
Defendant argues that his state and federal due process rights were violated by the State's use of hearsay evidence at his VOP hearing. While acknowledging that such hearings are technically not criminal in nature and do not require the same procedural demands as a criminal trial, defendant contends that such hearings still place probationers at risk of incarceration *356 and thus require careful procedural protections. Defendant contends that those procedural protections have not been adequately elucidated. Defendant maintains that Reyes's"demonstrably reliable" standard for the use of hearsay evidence in VOP hearings is vague, unclear, and subject to inconsistent application. Defendant asks that we adopt a new test, incorporating a variety of factors for determining the admissibility of hearsay evidence in VOP hearings. In defendant's view, any such test should assess the reliability of the hearsay evidence and, where necessary, critically analyze **179 the State's reasons for calling a witness without personal knowledge of the events in question.
Further, defendant contends that the hearsay adduced here is inadmissible under any standard. Defendant notes that the prosecutor provided no reason for failing to call Zundel as a witness. Defendant asserts that Carullo's testimony was unreliable because his recollection had to be refreshed numerous times and because his testimony was based, in part, on police reports that he did not prepare. Defendant thus maintains that the hearsay relied upon at his VOP hearing was not reliable and should not have been admitted to substantiate that he committed the new criminal offenses.
B.
The State contends that the trial court followed "longstanding principles of due process" in allowing Carullo's hearsay testimony. The State claims widespread support for the proposition that hearsay evidence is permissible in VOP hearings and that such hearings do not afford defendants the same procedural safeguards as a criminal trial. Moreover, the State argues that the evidence adduced here was "sufficiently reliable," as required by Reyes, and that the demands of due process were satisfied. The State maintains that to hold otherwise would be inconsistent with both state and federal case law and would place a heavy and unwarranted burden on the State to either produce witnesses at VOP hearings or at the very least explain their absence.
C.
Amicus ACLU-NJ argues that defendants subject to VOP hearings should receive the protections of the confrontation clause because such hearings are criminal in nature and thus entitle defendants to certain procedural safeguards. ACLU-NJ emphasizes the grave importance of ensuring that probationers are not imprisoned erroneously and posits that any burden imposed upon the State by such additional safeguards is warranted by the fact that those safeguards will aid in the truth-seeking process.
**180 Alternatively, ACLU-NJ maintains that even under the law as it currently stands the prosecution must show good cause for failing to allow a defendant to confront witnesses. In so arguing, ACLU-NJ states that we should not allow Reyes's vague standard to "eviscerate" a probationer's right to witness confrontation. Turning to the facts at issue here, ACLU-NJ argues that the State could not provide a sufficient reason to explain Officer Zundel's absence.[2]
*357 D.
The Attorney General, appearing as amicus, argues that VOP hearings are intended to be flexible and informal proceedings that provide trial courts with sufficient discretion to determine the reliability of hearsay evidence. Like the State, the Attorney General argues that VOP hearings are not a stage of criminal prosecution and thus do not provide the same protections as a criminal trial. Therefore, the Attorney General maintains, the current reliability standard does not violate defendant's due process rights and there is no reason to abandon the current rule in favor of a new standard that would turn VOP proceedings into "mini-trials" and imbue the process with unnecessary complications and uncertainty.
III.
A.
We start with some basic concepts governing probation, which is an authorized sentence under the New Jersey Criminal Code. N.J.S.A. 2C:43-2(b)(2).
**181 When imposing a sentence of probation, the sentencing court is empowered to incorporate, among other things, "such reasonable conditions ... as [the court] deems necessary to insure that [the defendant] will lead a law-abiding life or is likely to assist him to do so." N.J.S.A. 2C:45-1(a). An acknowledged "standard condition" of probation is that the probationer not commit another offense. State v. Wilkins, 230 N.J. Super. 261, 263, 553 A.2d 369 (App. Div. 1989) (recognizing that condition as inherent part of any probationary sentence authorized under Criminal Code). Defendant was subject to that standard condition. A probationer's commission of a new offense can support a finding of "failure 'to comply with a substantial requirement imposed as a condition of probation' " and provide grounds for the revocation of probation. Ibid. (quoting N.J.S.A. 2C:45-3(a)(4) ); cf. State v. Wasserman, 75 N.J. Super. 480, 484-85, 183 A.2d 467 (App. Div. 1962), aff'd, 39 N.J. 516, 189 A.2d 218 (1963) (recognizing, pre-Code, that proof of commission of new offense is basis for revocation of probation).
Provisions governing probation violation proceedings are set forth in the Criminal Code. N.J.S.A. 2C:45-3 addresses the summons or arrest of a defendant who is serving a period of probation, a defendant's commitment to custody pending a violation hearing, and the revocation of probation and resentencing of a defendant. More specifically, the statute provides that
[a]t any time before the discharge of the defendant or the termination of the period of ... probation:
....
(2) A probation officer or peace officer, upon request of the chief probation officer or otherwise having probable cause to believe that the defendant has failed to comply with a requirement imposed as a condition of the order or that he has committed another offense, may arrest him without a warrant.
[ N.J.S.A. 2C:45-3(a)(2).]
When a probationer has been apprehended, the court conducts a preliminary hearing. N.J.S.A. 2C:45-3(a)(3). If the court finds "probable cause to believe that the defendant has committed another offense or if he has been held to answer therefor," the court may hold the defendant "without bail pending a determination of the charge by the court having jurisdiction thereof." Ibid.
*358 **182 In terms of next steps, when a probationer is charged with committing a new criminal offense, he can be held pending a disposition on the new criminal charge and thereafter be subject to a probation violation hearing after a conviction. See N.J.S.A. 2C:45-3(a)(3) and (4). Or, the State may proceed with a probation violation hearing based on failure to comply with the condition requiring that the probationer lead a law-abiding life, notwithstanding that a conviction on the new criminal charge has not yet occurred. Wilkins, 230 N.J. Super. at 264, 553 A.2d 369. The recognized " 'preferable' procedure" is to delay substantive action on the probation violation until after the criminal conviction is secured. Ibid. (quoting 2 The New Jersey Penal Code: Commentary 347 (Criminal Law Revision Comm'n 1971)).
Ultimately, the court has the ability to revoke probation.
The court, if satisfied that the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of the order or if he has been convicted of another offense, may revoke the ... probation and sentence or resentence the defendant, as provided in this section.
[ N.J.S.A. 2C:45-3(a)(4) (emphasis added).]
If the court revokes probation, "it may impose on the defendant any sentence that might have been imposed originally for the offense of which he was convicted." N.J.S.A. 2C:45-3(b). In addition, the court may add to or modify the conditions of probation, even when not revoking probation. N.J.S.A. 2C:45-4.
In respect of process, the Code requires that a defendant receive notice of the nature of the VOP charges and the opportunity for a hearing. Ibid. (requiring, for probation revocation or modification, "a hearing upon written notice to the defendant of the grounds on which such action is proposed"). The State bears the burden of proving the charges by a preponderance of the evidence. Reyes, 207 N.J. Super. at 137, 504 A.2d 43. Importantly, at the VOP hearing, a defendant has the specific rights "to hear and controvert the evidence against him, to offer evidence in his defense, and to be represented by counsel." N.J.S.A. 2C:45-4.
**183 B.
1.
In addition to the statutory procedural protections conferred by the Code, a probationer in a VOP proceeding has the overlay of the protections of due process. The United States Supreme Court firmly established those protections in Gagnon v. Scarpelli, 411 U.S. 778, 781, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Although the Court noted in Gagnon that the revocation of probation occurs after sentencing is completed and is not "part of the criminal prosecution," it recognized that the potential for the loss of liberty represents "a serious deprivation" for the probationer, requiring due process of law. Id. at 781-82, 93 S.Ct. 1756.
The Supreme Court determined that, for VOP hearings, federal due process concerns are satisfied by informal proceedings that meet basic conditions previously prescribed for parole violation hearings. Id. at 782, 93 S.Ct. 1756 ("[A] probationer ... is entitled to a ... hearing, under the conditions specified in Morrissey v. Brewer" for parole violations); Morrissey v. Brewer, 408 U.S. 471, 484, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("What is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior.").
*359 Under the Morrissey construct, the minimal process required must include
(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.
[ Morrissey, 408 U.S. at 489, 92 S.Ct. 2593 (emphasis added).]
Despite listing requirements, Morrissey also allows room for accommodation in the proceedings, stating that "the process should be flexible enough to consider evidence including letters, **184 affidavits, and other material that would not be admissible in an adversary criminal trial." Ibid. Similarly, in Gagnon, the Court spoke approvingly of the conventional use, where appropriate, of substitutes for live testimony in VOP hearings, due to prosecutorial concerns were government to be burdened with an obligation to proceed only through live witnesses. 411 U.S. at 782 n.5, 93 S.Ct. 1756. The Court nevertheless insisted on reliable evidence, as due process requires, to prove a charge, adding the reminder that "in some cases there is simply no adequate alternative to live testimony." Ibid.
2.
Similar to federal law on the issue, New Jersey courts have viewed VOP hearings as "a part of the corrections process" rather than an element of a criminal prosecution. Reyes, 207 N.J. Super. at 134, 504 A.2d 43. Our approach has generally been to follow federal constitutional due process requirements in this area. Id. at 134-35, 504 A.2d 43 (noting that stricter state constitutional demands have not been imposed by our courts, except that New Jersey's probation statute, N.J.S.A. 2C:45-4, incorporates additional right to representation by counsel).
In Reyes, the Appellate Division explored the State's use of hearsay evidence to prove a VOP. Id. at 139, 504 A.2d 43. The defendant had been sentenced to a probationary term with the condition that he complete an eighteen-month residential drug program; however, he was discharged after four months and then failed to report to his probation officer. Id. at 132, 504 A.2d 43. At the VOP hearing, the State presented the testimony of a probation officer, who was not the defendant's probation officer, because defendant's probation officer was on sick leave at the time of the VOP hearing. Id. at 133, 504 A.2d 43.
The Appellate Division declared "[t]he admission and consideration of reliable hearsay evidence in probation violation proceedings [to be] both fair and practical." Id. at 139, 504 A.2d 43. The panel reached that conclusion for the sensible reason that "[t]he **185 production of witnesses to geographically remote but material events which may not be contested would be inconvenient and wastefully expensive." Ibid. Thus, the panel recognized that it was unproductive and perhaps unnecessary to insist that the State could not proceed initially with hearsay evidence, and it instructed that the State could supplement its proofs as necessary when the probationer contests the State's proofs. Ibid. The panel explained its accommodation as a "fair balance of the probationer's rights with the interest of the public." Ibid. *360 Substantively, the panel found the State's evidence in Reyes to be reliable in part because the defendant essentially offered no evidence to dispute the State's proofs that he had violated the terms of probation. Id. at 140, 504 A.2d 43. Reyes did not raise a factual dispute as to the claim that he had left the residential drug program prematurely, and the panel refused to impose on the State the burden of "negativing excusability." Id. at 139-40, 504 A.2d 43. Rather, the Appellate Division determined that the State had sufficiently proved, through "reliable hearsay evidence, defendant's discharge from the program." Ibid. The panel explained in detail why the evidence presented was sufficient:
If there was a dispute whether defendant had really been discharged, whether defendant actually behaved as the program staff reported, whether discharge was a reasonable response, or whether defendant's conduct was excusable, it was up to defendant to create that dispute by eliciting evidence to that effect on cross-examination or by offering such evidence. His failure to do so created the reasonable and lawful inference that no such dispute existed. That inference, coupled with the reliable hearsay proofs, was sufficient basis for [the judge's] determination that a violation of probation had occurred.
[ Ibid. ]
The panel succinctly summed up its holding, stating "[t]here is no constitutional bar to admission and consideration of demonstrably reliable hearsay evidence, but a finding of violation may not be bottomed on unreliable evidence." Id. at 138, 504 A.2d 43 (citing United States v. McCallum, 677 F.2d 1024, 1026 (4th Cir. 1982) (other citations omitted) ).
Following that comprehensive analysis of the law and explication of its application to Reyes's circumstances, no other published **186 decisions in this State have elaborated on the use of hearsay in VOP hearings and, as noted earlier, this Court has not spoken on the issue.
IV.
A.
Defendant presently claims his due process rights under the Federal and State Constitutions were violated by the State's use of hearsay in his VOP hearing. U.S. Const. amend. XIV ; N.J. Const. art. I, ¶ 1. As a broad statement of rights, it is incorrect that the use of hearsay in VOP proceedings is a per se violation of defendant's due process rights. To the extent this Court has not expressly stated that principle, we do so now.
Under Gagnon, federal due process rights permit flexibility in the use of substitutes for live testimony in probation violation hearings. 411 U.S. at 782 n.5, 93 S.Ct. 1756. And, as the Reyes panel concluded in 1986, state constitutional due process requirements had not been more strictly construed in the VOP setting. 207 N.J. Super. at 135, 504 A.2d 43. Nor have they since. Indeed, the New Jersey Rules of Evidence, updated since Reyes was decided, are not applicable to VOP hearings. See N.J.R.E. 101(a)(2)(C) ; 1991 Supreme Court Committee Comment on N.J.R.E. 101 (stating that rules of evidence do not apply in probation proceedings).
That said, the decision in Reyes does not suggest, in its letter or spirit, that hearsay could be used, wholesale, as proof of a VOP under any set of circumstances. Any such understanding of the Reyes opinion does it injustice. Reyes allows for flexibility for the State but is ever mindful of the need for sufficient reliable evidence to prove the factual underpinnings to a charged violation. The decision emphasizes the obligation of a court to be fair and *361 balanced to the rights of the defendant to have due process, which includes the right to be proven guilty by reliable evidence and to confront the evidence advanced against him. The decision also **187 strives to avoid placing wasteful, unnecessary obligations on the State if it can prove its case through hearsay and other non-live evidence, including the supplementation of the record through cross-examination or additional witnesses on leave granted. Also, the use of inferences can fill evidential obligations where supported by the record, as Reyes explained.
Overall, the framework that was established in Reyes was and remains sound. In the years that have ensued since Reyes issued, appellate courts in numerous other jurisdictions have addressed the use of hearsay in VOP hearings. In their own ways, those courts have sought to offer guidance to trial courts on when hearsay may be relied upon to support a VOP charge while balancing the rights of the defendant in such a proceeding. The starting premise, however, is that hearsay generally is admissible in VOP hearings. The devil is in the detail of avoiding trenching on the due process confrontation rights of a defendant.
B.
With respect to state courts that consider the question, the overwhelming majority allow the admission of hearsay so long as the hearsay is determined to be reliable. See, e.g., State v. Stotts, 144 Ariz. 72, 695 P.2d 1110, 1119-20 (1985) ; State v. Giovanni P., 155 Conn.App. 322, 110 A.3d 442, 447-48 (2015) ; Reyes v. State, 868 N.E.2d 438, 441-42 (Ind. 2007) ; State v. Graham, 272 Kan. 2, 30 P.3d 310, 313 (2001) ; Bailey v. State, 327 Md. 689, 612 A.2d 288, 292-93 (1992) ; State v. Guthrie, 150 N.M. 84, 257 P.3d 904, 914-15 (2011). The reliability of the evidence to support the VOP charge satisfies due process concerns in such states.
In addition to examining for reliability, a number of states also require a specific showing of good cause by the prosecution to explain the failure to call a witness and instead offer hearsay evidence. See State v. Marrapese, 122 R.I. 494, 409 A.2d 544, 548-49 (1979) (construing State v. DeRoche, 120 R.I. 523, 389 A.2d 1229 (1978) ); State v. Brown, 215 W.Va. 664, 600 S.E.2d 561, 564-65 (2004). In such circumstances, the explanation can be incorporated **188 into the examination for reliability when determining the sufficiency of the evidence to sustain the VOP charge.
In the federal sphere, a form of balancing test is utilized for determining the admission of hearsay evidence in VOP proceedings. In the seminal case of United States v. Bell, 785 F.2d 640, 642-43 (8th Cir. 1986), the Eighth Circuit established a balancing test for reconciling a probationer's confrontation rights under Morrissey with the government's reasons for not providing an opportunity for confrontation:
As is true of any balancing test, it is not possible to articulate fixed rules on what the government must show to establish "good cause" in every case. However, there are several factors which should be evaluated in examining the basis cited by the government for dispensing with confrontation.
First, the court should assess the explanation the government offers of why confrontation is undesirable or impractical. For example, the government might contend that live testimony would pose a danger of physical harm to a government informant, see Birzon v. King, 469 F.2d 1241, 1244 (2d Cir. 1972), or, as suggested by Gagnon, that procuring live witnesses would be difficult or expensive.
*362 A second factor that must be considered, and one that has been focused upon by a number of courts, is the reliability of the evidence which the government offers in place of live testimony. See, e.g., United States v. Burkhalter, 588 F.2d 604, 607 (8th Cir. 1978) ; United States v. McCallum, 677 F.2d 1024, 1026-27 (4th Cir. [1982] ). Thus, where the government demonstrates that the burden of producing live testimony would be inordinate and offers in its place hearsay evidence that is demonstrably reliable, it has made a strong showing of good cause. Where, on the other hand, the government neither shows that presenting live testimony would be unreasonably burdensome nor offers hearsay evidence that bears indicia of reliability, the probationer is entitled to confrontation.
[ Ibid. (footnote omitted).]
Following Bell's lead, other federal courts began adopting a balancing-test approach. United States v. Chin, 224 F.3d 121, 124 (2d Cir. 2000) ; United States v. Walker, 117 F.3d 417, 420 (9th Cir. 1997) ; United States v. Grandlund, 71 F.3d 507, 510 (5th Cir. 1995) ; United States v. Frazier, 26 F.3d 110, 114 (11th Cir. 1994).
Of particular note is the Ninth Circuit's enunciation of the proper balancing in Walker. Walker instructs trial courts to consider several factors when balancing interests in connection with the use of hearsay at a VOP hearing: (1) "the importance of the evidence to the court's finding"; (2) "the [probationer's] opportunity **189 to refute the evidence"; (3) "the consequences [for the probationer] of the court's finding"; (4) "the 'difficulty and expense of procuring witnesses' "; and (5) "the 'traditional indicia of reliability borne by the evidence.' " 117 F.3d at 420 (quoting United States v. Martin, 984 F.2d 308, 312 (9th Cir. 1993) ). We add that Federal Rule of Criminal Procedure 32.1(b)(2)(C) was amended in 2002 to impose a balancing of interests. Under the rule as currently constructed, a federal defendant facing a revocation of probation "is entitled to," among other things, "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." That 2002 amendment incorporated the balancing approach that circuit courts had begun to follow. See generally United States v. Jones, 818 F.3d 1091, 1098-1100 (10th Cir. 2016) (discussing development of law and significance of Rule amendment). Presently all circuit courts of appeals but the Sixth Circuit have expressly adopted a balancing-test approach.[3]
Several state jurisdictions now follow a balancing approach akin to the one initially expressed in Bell or as otherwise updated. See State v. Wibbens, 238 Or.App. 737, 243 P.3d 790, 792-93 (2010) (applying balancing test adopted by Ninth Circuit); State v. Beck, 619 N.W.2d 247, 250-52 (S.D. 2000) ; State v. Austin, 165 Vt. 389, 685 A.2d 1076, 1081 (1996).
C.
Although we adhere to the use of hearsay at VOP hearings, we endorse a balancing approach that includes assessment of the reasons for the government's proceeding through the use of hearsay in *363 addition to testing the evidence's reliability. Merely **190 because the rules of evidence are inapplicable to VOP hearings does not control whether due process would be violated by the court's acceptance and reliance on unreliable evidence to sustain a VOP charge. The evidence to support the VOP charge must be reliable to meet due process concerns, and the reason for relying on hearsay informs the decision on the evidence's overall reliability. Reyes, 207 N.J. Super. at 139, 504 A.2d 43 (noting that court's decision as to when to admit hearsay evidence should "represent[ ] a fair balance of the probationer's rights with the interest of the public").
We conclude that the Walker factors provide a helpful refinement of the guidance already existing in New Jersey from the Reyes decision. See id. at 138, 504 A.2d 43 (noting that right to confrontation is "one element among several to be considered and weighed by the hearing body"). The Walker factors that we adopt to guide trial courts bear repeating: (1) "the importance of the evidence to the court's finding"; (2) "the [probationer's] opportunity to refute the evidence"; (3) "the consequences [for the probationer] of the court's finding"; (4) "the 'difficulty and expense of procuring witnesses' "; and (5) "the 'traditional indicia of reliability borne by the evidence.' " 117 F.3d at 420 (quoting Martin, 984 F.2d at 312 ). Each factor can assist the trial court in analyzing the reliability of the hearsay being offered by the State and the fairness of its use. And, in the context of what is or is not being contested by the defendant, the court should explain its reasons for determining that the hearsay evidence is reliable for its stated purposes.
D.
Applying those considerations to the case at hand, we conclude that the State deprived defendant of an important due process confrontation right at the VOP hearing.
The State charged defendant with violating probation by committing another criminal offense. While normally that type of VOP charge is demonstrated through the submission of proof of a **191 criminal conviction, the State here opted to proceed first with the VOP charge. It was incumbent on the State then to prove the new criminal charge. See Reyes, 207 N.J. Super. at 138, 504 A.2d 43 ("In violation hearings, the circumstances control the admission and consideration of offered evidence.").
Defendant's ability to defend against the new criminal charges, which were the premise for the VOP charge, was undermined because the State deprived defendant of the opportunity to confront and cross-examine Zundel, or anyone else, who saw the events transpire. Defendant was prevented from questioning the key observer-Zundel-on what he could or could not see, or see well, on the day of the events in the parking lot. See ibid. ("In some situations, there is no adequate alternative to live testimony."). The State instead proceeded with Carullo's hearsay testimony about what Zundel reported he observed on the day of the events in the parking lot instead of producing Zundel himself. A police report by Zundel, prepared in the context of an investigation and recounting subjective events in a narrative form, is not a document that fits into any exception to the hearsay rule. State v. Kuropchak, 221 N.J. 368, 388-89, 113 A.3d 1174 (2015) (holding that DWI reports containing narrative accounts by police officer are inadmissible hearsay). The hearsay evidence that the court accepted from Carullo was not reliable to prove the underlying new criminal charges that were the basis for defendant's VOP charge. The consequences of the court's determination to *364 treat the evidence as reliable in this context were substantial for defendant.
The State did not even explain why Zundel was not available on that hearing day, or on an adjourned day, as Reyes contemplates when a factual matter, which is first presented through the production of hearsay, is disputed by a defendant. See Reyes, 207 N.J. Super. at 139, 504 A.2d 43 (noting that State may seek adjournment to supplement its proofs where hearsay evidence is contested). By declining to call any witness other than Carullo, the State prevented defendant from being able to confront the quality **192 of the evidence against him. We hold that defendant was denied a hearing that met due process requirements.
In this case, for the reasons expressed, we are constrained to conclude that the use of hearsay evidence to sustain the VOP charge against defendant was error.
V.
We reverse the judgment of the Appellate Division that affirmed defendant's VOP charge.
CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, AND TIMPONE join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a separate opinion concurring in the judgment.

ACLU-NJ also argues that the VOP hearing here resulted in defendant receiving a penalty for the original offense above the statutory maximum, and in violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because defendant was not entitled under our law to receive jail credit for time spent serving his probationary sentence. That argument has not been raised by the parties. We decline to consider an argument raised for the first time by an amicus curiae in an appeal. State v. J.R., 227 N.J. 393, 421, 152 A.3d 180 (2017).

See Jones, 818 F.3d at 1099 ; United States v. Jordan, 742 F.3d 276, 279-80 (7th Cir. 2014) ; United States v. Doswell, 670 F.3d 526, 530-31 (4th Cir. 2012) ; United States v. Lloyd, 566 F.3d 341, 344-45 (3d Cir. 2009) ; United States v. Stanfield, 360 F.3d 1346, 1359 (D.C. Cir. 2004) ; United States v. Taveras, 380 F.3d 532, 536 (1st Cir. 2004) ; Chin, 224 F.3d at 124 ; Walker, 117 F.3d at 420 ; Grandlund, 71 F.3d at 510 ; Frazier, 26 F.3d at 114.