**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3280-17T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

VINCENT C. OGLESBY,
a/k/a OGLESBY C. VINCENT,

    Defendant-Appellant.

_____

Submitted December 12, 2019 – Decided March 4, 2020

Before Judges Alvarez and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-04-1240, and Cape May County, Indictment No. 16-05-0518.

Joseph E. Krakora, Public Defender, attorney for appellant (Al Glimis, Designated Counsel, on the briefs).

Jeffrey H. Sutherland, Cape May County Prosecutor, attorney for respondent (Gretchen Anderson Pickering, Senior Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Vincent C. Oglesby appeals from an aggregate sentence of nine years in prison with four-and-one-half years of parole ineligibility for violating special Drug Court probation. N.J.S.A. 2C:35-14(a). He argues the violation of special probation hearing violated his due process rights and that the trial court abused its sentencing discretion.[1] We affirm.

I.

Defendant was charged in Camden County indictment 16-04-1240 with third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1); second-degree possession with the intent to distribute heroin, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2); and second-degree conspiracy to possess CDS with intent to distribute CDS, N.J.S.A. 2C:5-2, N.J.S.A. 2C:35-5(a)(1), and N.J.S.A. 2C:35-5(b)(2). A month later, defendant was charged in Cape May County indictment 16-05-0518 with third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1); third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1); third-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:5(b)(3); and third-degree

_____

[1] An issue involving jail credits was withdrawn by defendant.

2                                                                                    A-3280-17T2

possession of heroin with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:5(b)(3).

Defendant pleaded guilty to all four counts of the Cape May indictment. In the plea hearing, defendant acknowledged he intended to sell the heroin and cocaine that the police found in the search of his residence. The State opposed defendant's request for special Drug Court probation and gave no recommendation to the court on an alternative sentence.

Two weeks later, defendant pleaded guilty under the Camden County indictment to one count of second-degree possession of heroin with intent to distribute. Defendant acknowledged he intended to share, sell or distribute the heroin found in the vehicle he was occupying with others. The State recommended "a term of five years special probation, with the condition that . . . [d]efendant complete the Drug Court Program" and payment of financial fines and penalties. The State advised defendant's plea would be an "open plea." It consented to consolidation for sentencing in Cape May.

In August 2017, defendant was sentenced to five years special probation to complete the Drug Court program. The trial court found aggravating factors three—the risk defendant will commit another offense; six—defendant's prior criminal record; and nine—deterrence; and mitigating factor ten—likely to

respond to probationary treatment. N.J.S.A. 2C:44-1(a)(3), (6) and (9); N.J.S.A. 2C:44-1(b)(10). The trial court determined mitigating factor ten outweighed the aggravating factors "for the purposes of getting him into drug court."

The trial court noted there needed "to be [a] stiff alternative sentence . . . to keep [defendant] mindful of the importance of his succeeding in drug court." On the Cape May indictment, it imposed an alternative sentence of four-year terms of incarceration to be served concurrently on counts three and four (possession with intent to distribute), with two-year periods of parole ineligibility. The other two counts were merged. On the Camden indictment, the trial judge imposed an alternative sentence of five years' incarceration with a two-and-one-half-year period of parole ineligibility to be served consecutively to the Cape May charges. Thus, the aggregate alternative sentence was a nine-year term with a four-and-one-half-year period of parole ineligibility, and financial fines and penalties.

Defendant was transferred to a long-term in-patient drug treatment program. Within two months in the program, defendant was charged with violating special probation because he was terminated from the in-patient program for failing to "cooperate in examination/tests/counselling treatment." He also did not pay a court imposed financial obligation. The violation summary

provided that after defendant's transfer to the in-patient facility "in a little more than a month [defendant] began to exhibit gang behavior which posed enough of a risk to the program that [he] was discharged as a risk." It explained his behavior "creates a risk to both the public and other participants in the Drug Court Program and cannot be tolerated."

At the special probation violation hearing, a letter from the in-patient facility, signed by the facility's director and by a counselor, was included in evidence. The letter alleged defendant "engaged in gang activity with other residents in the program" and that he was part of the "[B]loods gang." It explained that defendant was seen "displaying gang handshakes with other members of the gang" and wearing red beads around his neck that "represent membership to the gang." There was tension between rival gangs posing "a safety concern." The letter reported defendant may have been involved in "physical assaults and threatening remarks[,]" and other students at the facility "fear[ed] retaliation and retract[ed] their statements." The letter reported defendant allegedly went into the rooms of those residents to confront them and "may have gotten physical with them." The letter explained "the code of silence and fear of retaliation is preventing . . . other residents" from giving their names or writing reports. Defendant was discharged from the program. The letter

recommended defendant have a "higher level of structured care where security presence [could] be enforced."

A probation officer testified at the special probation violation hearing, based on the letter, that defendant engaged in gang-affiliation conduct, including handshakes and wearing beads, and was terminated from the program due to those "behaviors that they deemed to be dangerous[.]" He testified defendant's successful completion of the drug treatment program was a condition of his special probation. The probation officer acknowledged he did not have first-hand knowledge about the gang handshakes or the accuracy of the facility's letter. However, he testified the facility was not made aware of defendant's gang-affiliation when he was admitted, but it had come to the same conclusion.

Defendant testified he was not a Bloods gang member. He denied knowledge about gang handshakes, but acknowledged he shook hands with his workout team to celebrate after a "grueling workout." He testified that when he was younger, he was jumped and his arm was broken for wearing his favorite color red among "rival gang people wearing blue." He testified his cousin sent him the red beads he was wearing at the facility. These were Buddhist beads and were "supposed to teach [him] peace and serenity." Because his birthday was in December, defendant testified his favorite colors were red and green.

6

Defendant testified he saw people at the facility wearing "[a]ll types of things that indicate gang membership." He claimed there almost was a riot between the gangs on the first day he was there. He testified when they all were told to give up their beads, he gave his up first because he did not want to be mistaken for a gang member. Defendant testified a counselor asked him to speak with two other people at the facility, who he knew from prison, but who were "wildin'," and he did that, but he denied assaulting or threatening anyone. Defendant testified he was denied Drug Court probation on account of alleged gang affiliation because he was not "paying attention" to his red beads or handshakes. Defendant sent a letter to the judge stating much of the same information.

The Cape May County Drug Court coordinator testified it was not likely defendant would be placed in another residential treatment program in light of his experience at this facility. She denied the facility was advised about defendant's gang affiliation.

The trial court found defendant violated the terms and conditions of his probation because completion of the in-patient program was a condition of special probation, but he was terminated from the program. In sentencing defendant to special probation, the court noted it previously found aggravating

7

factors three, six and nine were outweighed by mitigating factor ten, but that mitigating factor ten "no longer pertains." The trial court imposed the alternate sentence, finding that mitigating factor ten no longer existed, and also recommended drug treatment for defendant while he is in prison.

On appeal, defendant raises these issues:

POINT I

A NEW VIOLATION OF PROBATION HEARING SHOULD OCCUR BECAUSE MR. OGLESBY'S DUE PROCESS RIGHT WAS VIOLATED BY THE COURT'S ACCEPTANCE OF HEARSAY AS PROOF THAT HE INEXCUSABLY FAILED TO COMPLY WITH A SUBSTANTIAL CONDITION OF PROBATION. (U.S. CONST. AMEND. XIV; N.J. CONST. ART, I, PARA. 1.).

POINT II

THE COURT ABUSED ITS SENTENCING DISCRETION BY: 1) IMPOSING A SENTENCE BASED NOT ON THE AGGRAVATING AND MITIGATING FACTORS, BUT LARGELY BASED ON A DESIRE TO INCENTIVIZE DEFENDANT TO COMPLETE DRUG TREATMENT; 2) IMPOSING A DISCRETIONARY PERIOD OF PAROLE INELIGIBILITY WITHOUT MAKING THE STATUTORILY REQUIRED FINDING THAT THE AGGRAVATING FACTORS SUBTANTIALLY (sic) OUTWEIGH THE MITIGATING FACTORS; AND 3) BY IMPOSING CONSECUTIVE SENTENCES WITHOUT REASONS.

POINT III

THE MATTER SHOULD BE REMANDED TO REIMPOSE 26 DAYS OF JAIL CREDIT ERRONEOUSLY REMOVED FROM THE JUDGMENT OF CONVICTION ON IND. NO.16-05-00518.

II.

Our review of a sentencing determination is limited.  State v. Roth, 95 N.J. 334, 364-65 (1984).  We review a judge's sentencing decision under an abuse of discretion standard.  State v. Fuentes, 217 N.J. 57, 70 (2014).  "[A]ppellate courts should not 'substitute their judgment for those of our sentencing courts[.]'"  State v. Cuff, 239 N.J. 321, 347 (2019) (quoting State v. Case, 220 N.J. 49, 65 (2014)).

The Comprehensive Drug Reform Act of 1987, N.J.S.A. 2C:35-1 to -31, provides for special probation to Drug Court.  "Special probation is designed to divert otherwise prison-bound offenders into an intensive and highly specialized form of probation designed to 'address in a new and innovative way the problem of drug-dependent offenders caught in a never-ending cycle of involvement in the criminal justice system.'"  State v. Bishop, 429 N.J. Super. 533, 540 (App. Div. 2013) (quoting State v. Meyer, 192 N.J. 421, 434-35 (2007)).  If special probation is violated, a court may permanently revoke the probation and then

"shall impose any sentence that might have been imposed, or that would have been required to be imposed, originally for the offense for which the person was convicted or adjudicated delinquent." N.J.S.A. 2C:35-14(f)(4).

Defendant argues the trial court abused its discretion in sentencing him, arguing the sentence was not based on a weighing of aggravating and mitigating factors nor based on appropriate findings. Defendant does not allege the sentence violated sentencing guidelines. The sentence of four years for the third-degree offenses and five years for the second-degree offense fell within those guidelines. See N.J.S.A. 2C:43-6(a)(2) and (3).

In sentencing defendant initially, the trial court found three aggravating factors (factors three, six and nine) and one mitigating factor (factor ten). In support of aggravating factors three and six, the trial court noted that while only twenty-three years old, defendant had "[seventeen] juvenile adjudications" and "three prior municipal court convictions and three prior superior court convictions" as an adult, concluding defendant "got off to a pretty terrible start in the drug world and the criminal world." After the violation finding, the trial court found that mitigating factor ten no longer applied, but continued to find the same aggravating factors. Therefore, the aggravating factors by definition outweighed the non-existing mitigating factor. Defendant does not contend the

10

aggravating factors were improper or that mitigating factors should have been found. There also was nothing about the sentence that was shocking to the judicial conscience.

Defendant argues the court erred in finding a violation of special probation because it was based on hearsay testimony rather than personal knowledge testimony. Our Supreme Court recently addressed the use of hearsay testimony at probation violation hearings. In State v. Mosley, 232 N.J. 169, 187 (2018), the Court held that "hearsay generally is admissible in [violation of probation] hearings. The devil is in the detail of avoiding trenching on the due process confrontation rights of a defendant." The Court delineated the factors trial courts are to use in determining whether the proofs are sufficiently reliable. Id. at 190. Mosley was decided shortly after the hearing at issue here. Id. at 169. Even prior to Mosley, it was clear hearsay could be used if it was reliable. See State v. Reyes, 207 N.J. Super. 126, 139 (App. Div. 1986), superseded by statute, N.J.S.A. 2C:35-14.

The successful completion of the in-patient drug treatment program was a condition of defendant's special probation. Defendant was terminated from the program at the inpatient treatment facility. Defendant takes issue with the reasons the facility terminated his participation. However, he acknowledged

11

using various handshakes. He wore colors that he knew from past experience were identified with gangs. He did not deny going into the room of another resident described as "his" person to defuse a situation involving gang activity. Although he denied that any of this was gang related, his testimony in many ways corroborated information in the facility's letter to the court. There was no abuse of discretion by the trial court in finding the condition of drug court probation—his participation in the in-patient program—was not met because he was terminated from the program.

Defendant argues the trial court did not provide an explanation for sentencing defendant to consecutive terms. In State v. Yarbough, 100 N.J. 627, 643 (1985), the Court stated that "the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision[.]" And in State v. Carey, 168, N.J. 413, 424 (2001), the Court provided that where a court "fails to give proper reasons for imposing consecutive sentences at a single sentencing proceeding, ordinarily a remand should be required for resentencing."

Although the judge here "did not carefully articulate the [required] standards," the separate indictments left no doubt there were separate crimes and it was that which supported the consecutive sentences imposed. See State v.

<u>Jang</u>, 359 N.J. Super. 85, 97-98 (App. Div. 2003) (affirming consecutive sentences when the "facts and circumstances leave little doubt as to the propriety of the sentence" even though the sentencing court did not "carefully articulate the standards."); <u>see also</u> State v. D'Amato, 218 N.J. Super. 595, 608 (App. Div. 1987) (finding no reason to disturb maximum and consecutive sentences imposed by the trial court). As in <u>Jang</u>, "we need not modify the sentence or remand for further reasons where there is no showing that the sentence is 'clearly mistaken.'" <u>Jang</u>, 359 N.J. Super. at 98 (quoting <u>State v. Krophold</u>, 162 N.J. 345, 355 (2000)).

Defendant also contends the court did not make adequate findings in determining to impose periods of parole ineligibility. "After determining the sentence, the court must decide, in accordance with [N.J.S.A. 2C:43-6(b)], whether to impose a period of parole ineligibility." <u>State v. Kruse</u>, 105 N.J. 354, 359 (1987). Parole ineligibility can be imposed "when the sentencing judge is clearly convinced that the aggravating factors of N.J.S.A. 2C:44-1(a) substantially outweigh the mitigating factors under N.J.S.A. 2C:44-1(b)." <u>State v. Brown</u>, 384 N.J. Super. 191, 194-95 (App. Div. 2006).

In sentencing defendant, the trial court found there were no mitigating factors, only aggravating factors. The terms of parole ineligibility imposed

reflected the trial court was clearly convinced the aggravating factors were not counterbalanced by any mitigating factors. There was no abuse in discretion by sentencing defendant to a custodial sentence within the sentencing range with a period of parole ineligibility in light of the absence of mitigating factors. Again, we need not modify or remand the sentence when there is no showing it is clearly mistaken. See Jang, 359 N.J. Super. at 98.

We conclude that defendant's further arguments under his point headings I and II are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3280-17T2